This is counsel on the Cohen matter, is that correct? Yes, it is, your honor. Okay, wonderful. And we have counsel for Mr. Cohen and counsel for the governor of the Virgin Islands, is that right? Yes, that's right, your honor. Okay, wonderful. Let's have counsel for appellant, and please tell us before you begin how much time you'd like to reserve for rebuttal. Thank you, judge. Your honor, on behalf of Jonathan Cohen, may I please report, judge, we respectfully request five minutes for rebuttal. Very well, five minutes for rebuttal, sir. We'll set the clock. Go ahead. Thank you. Thank you very much. On behalf of Mr. Cohen, my client received a full and unrestricted pardon on December 22nd, 2018. Ten days later, eleven days later, or before, the court discharged probation pursuant to the full unrestricted pardon that he received from the governor of the Virgin Islands. Let me ask you a question, sir. You used the term full and unrestricted, which is a – it would be a wonderful term, I think, if it applied. Now, if it were full and unrestricted, you'd agree that we wouldn't be here, right, because there'd be no question that the taxes involved here would be excused if it was full and unrestricted. Let me ask you about this. The amount due was negotiated pursuant to the criminal involvement that Mr. Cohen had, is that right? That's correct. Okay. And it was an amount that was agreed between the parties that a certain amount of taxes would do, right? That's correct. Okay. So let me ask you this. We all can agree that there's no specific mention that you could look to a particular word, term, phrase, clause that the taxes at issue should fall away by the pardon. Is that right? There's no direct language from the governor. That's correct. Very good. So my question then is, if we were to interpret the language of the pardon in the manner in which you suggest, that would be a serious windfall to Mr. Cohen and a detriment to the government of the Virgin Islands. Help me through how that wouldn't be so. Well, absolutely not, because the government has the right to seek a parallel civil judgment against my client. Victims, in any case where something wrong has happened to them, they can go into the civil court, they can have discovery, both parties, one party won't have to be burdened by the uneven prosecutorial power of the prosecutor and the potential criminal. So, sir, I apologize for interrupting, but I just want to make really clear. It's not your position, and I want to know what your position is. Is your position that the pardon excuses the underlying liability? Or is it your position that the underlying liability still exists, it just cannot be compelled to be paid through this criminal restitution order? The latter is my argument. I'm arguing that the restitution order in and of itself is unenforceable. So usually what happens in the tax context is when a person doesn't pay taxes, the mental state usually has to be pretty high up the chain to kind of say you didn't pay taxes and it's criminal. That has to be willful, intentional, fraudulent. Negligence says there's a little more give on that, and that's kind of reserved to the civil system. And so what happens here is your client was in that criminal space for not paying taxes, received a pardon from the criminal space. But you just admitted, I think, if I heard you, that your client still owes in that civil space for the tax liability. The question is just does your client then have the burden of complying post-pardon with all of the criminal consequences for non-payment of that tax liability? That is precisely my argument. My argument is, one, the amount of tax liability should be determined in the civil context. We're not arguing that there was not an underlying tax liability. The amount of taxes agreed upon by your client that arise pursuant to this restitution order can be punitive. The case law talks about the dichotomy between compensatory on the one hand and punitive on the other. How is this punitive, particularly given the position you've just articulated to Judge Fisk? Well, it's completely punitive because it was negotiated in the criminal context. The amount that was negotiated, which was not an element of the offense, was negotiated in the context of determining what the sentence should be, which could have included prison. Can I just interrupt you? When you say it could have included prison, what happens if your client misses, assuming, just take the pardon off the table, but let's just say that you had a payment schedule that you and your client agreed to for criminal restitution. What happens if your client has missed one of those payments? It's not foreclosure. It's not a lien. It's not a judgment. It's criminal penalty, right? That's criminal penalty and needs to be put in prison. The court in the June 3rd hearing suggested that he wanted to adjudicate this matter expeditiously because he wanted to determine whether or not my client was required to show cause. Are you saying that the amount of taxes for which your client is liable was incorrectly assessed? Or can we safely assume that it was correctly assessed, that it was in fact what he owed? We're suggesting that the matter and the calculation was done with uneven negotiation power. Now I see that you want to go back and redo the whole thing. We want them to sue us in civil court and for you to make a statutory adjustment, and someone will determine how much is owed without having an uneven, unbalanced negotiating power, including the power of putting my client in prison. Did he have a counsel representing him during that process? Absolutely, yes. And so wasn't he well represented and negotiated the amount that was owed in taxes? We're arguing that the negotiation, even though he was well represented, it was done in the context of determining what his sentence should be. So I mean that sentence could have, they had everything on the table during the negotiation. I thought his sentence, he wasn't sentenced to a term in jail, was he? Yeah, his court adopted the negotiated agreement between the parties. Okay, thank you. Yeah, but I thought Judge Fuentes was going to go where I'm about to go, which is if he was represented by counsel and the resultant sentence was probation, that seems to imply that there was steady negotiations, that they were actually quite feisty and not the government just exerting its will over you. That's right. Exactly. So our position is that's the purpose of having criminal tax proceedings. A lot of the times you'll also have a parallel civil case, and that could quite possibly render a different judgment amount between the parties, tax judgment amount. We're suggesting that the government, as we stand here today, it's not foreclosed from going to the civil context, possibly using the statements and the order here in the restitution amount to try to get that court to adopt the same amount. Another argument, a chief argument is, unlike the federal code, there's nothing in the local code that allows the conversion of a criminal judgment to a civil judgment, and nothing that allows the criminal judgment to be enforced by the victim in a criminal case. There's nothing that allows the conversion or the execution once the sentence has been discharged or whatever the case may be. But there is something that allows the enforcement of an agreement between consenting parties, especially when those represented by counsel. Well, we submit that that should be the underlying judgment in and of itself, not the enforceable aspect. It would possibly be the agreement itself, and we submit that the agreement was done, as I see Harkin on this, during the context of a criminal proceedings. So if I understand your point, what you're saying is you negotiate differently if it's a criminal context than if it's a civil context. It's like saying, I need a loan today. If you need a loan today, you might agree to worse terms, and if you say, I need a loan sometime in the next three years, well, you can shop for better interest rates, better repayment terms, all this other stuff. You can still negotiate the best you can for a loan today, and you can still negotiate the best you can for a loan in the next three years. But regardless of how good a negotiator you are, you might not get the same deal if you need the loan today. Precisely, and there are various defenses that you can apply, which you can't apply during the potential of being put in prison and those kind of things. Well, help me. That was a great analogy by my colleague, but if you have a tax liability, you have a tax liability. Now, there might be some questions I presume you're talking about. Well, you know, I took a particular deduction here that's open to questioning, but here's what I don't understand. Well, the tax law doesn't change based on context. So you either have an argument to escape liability on a particular point or you don't. The deduction is good, the deduction is bad. The deduction is permissible under the tax law, the deduction is not, or whatever the particular tax issue is. How does that change whether you're in a criminal context or a civil context? You have the same arguments. Not necessarily, because in a criminal context, during pre-negotiations, the prosecutor doesn't have the obligation to accept it under the threat that the court could accept our arguments and not theirs. So doesn't the question come down to whether or not this agreement that you reached that was memorialized in the judgment survives the pardon or whether the agreement was merged into the judgment so that when the judgment is pardoned, then the agreement's gone with it and then it's subject to renegotiation. If the agreement's already separate, then it's probably going to survive even a pardon. But if the agreement merged into the sentence and then the sentence comes around and gets pardoned, the offense itself gets pardoned, then the agreement's out the door too. So I think what you have to do, at least that's how I understand it, you have to establish and convince us that your agreement was merged into the sentence and that the pardon went to that sentence and that there's no freestanding agreement. What do you say to that? That's my position. My position is, pursuant to the local statute or even the federal statute, obviously the court can accept, reject, or have its own rationality as to why it's imposing whatever sentencing wants to impose, including restitution. Believe me, just to follow up, why isn't that agreement a freestanding agreement? That is not necessarily connected to the sentence. Well, primarily because it was done in the context of uneven, unbalanced negotiation. So, for example, in the criminal context, I mean, defendants make deals that they may take a plea in a case where they're not guilty, for example, but they're doing it to preserve their own well-being, to preserve their own, mitigate their own consequences of the charges. It's very difficult to start with the premise that it's uneven negotiation. That's antithetical to the law in which our system operates. That's why, you know, we had Gideon versus Waymer because we recognized that in a particular context, without counsel, it's uneven. Now, you know, we can talk about the realities of prosecution and defense. That's an interesting cocktail conversation, but that's not the essence of what we're talking about now. We can't assume as a court for these purposes that it's uneven and that when counsel represents someone on a criminal tax case that there's an uneven posture so that when there's an agreement as to what the tax liability is, it's the overbearing government that has imposed its will on the defendant. I only speak for my colleagues, but that's a premise that I don't think we can operate under. I understand a third, but the practical aspect of it and the body of case law that we've seen is that some defendants may plead guilty even though they're not actually guilty just to mitigate the consequences of the criminal charges. I mean, you probably have an argument that doesn't call into question the entire integrity of the criminal justice system. You probably have a narrower argument which just says I could have negotiated a better deal if criminal penalties were off the table than the deal I could negotiate when criminal penalties were on the table. But even that argument – I mean, let me just ask this. Did you reach this agreement through a memorialized in-writing plea agreement? Yes. Yes, it was a memorial. It was an in-writing. My client signed it. And so parts of that plea agreement – so the pardon says that, hey, parts of that plea agreement don't apply anymore apparently, and so the question is does the restitution component of that agreement survive or not, or did the pardon go to the offense or just the punitive parts of the offense or some other hair-splitting line? We're submitting that in this sentence the condition of the probation was paid restitution as calculated or as outlined by the court order. Our position is very narrow. That restitution judgment does not survive the pardon. Why is that? Very easy to answer the judge's question. I like the answer, but tell us why. Why did we deem this agreement merged into the sentence for the purposes of pardons when there is – help us. Where's the case law? Where's the analogy in hopefully a pre-argument opposite cases that would allow us to make this, I think, leap? Ward v. People, where the Virgin Islands Supreme Court outlined the fact that restitution is part of the sentence and it's inherently penal. United States v. Slate, third circuit case, Paroline v. United States. Let me ask you another question. On this plea agreement, and I'm not seeing it in the record, so if you have a JA site for this or something like that, that would be really helpful to me. But courts don't always have to accept every term in a plea agreement. And, in fact, many times people enter open pleas. In fact, some judges and some U.S. attorneys don't even want people to agree to C1C pleas or anything else like that where you say, hey, this is what we agree, and even courts can accept that. So I guess my question is your plea agreement, was it a C1C plea? Was it some other – was it an open plea? What sort of plea was this? And doesn't that still have to be accepted? Isn't that just an agreement between the parties to what you've pitched, more or less, to the district judge for that district judge's sentencing and that sentencing is an independent judgment that can affirm or reject that agreement and that that agreement is extinguished once the district judge rules? So in this case, there was no C1C plea. This case was a plea that both parties represented to the court what they would argue, and the court – it was up to the court then to accept it. The court accepted it and sentenced him generally in accordance with the plea agreement. So if I'm hearing what you're saying is the reason that the agreement doesn't survive is because the agreement was only limited to what the parties would pitch to the district court for purposes of sentencing. Once that pitch was made, the agreement expires. Exactly. And it's then up to the court to determine what the actual sentence is. Is the plea agreement in the JA or somewhere else? We would ask for leave to file it. We didn't file it in the JA. We apologized. We submitted it to the court, but the Rule 11 colloquy is not there as well. And the Rule 11 colloquy will tell you in the district court – I mean, I'm sorry, the judge outlined the fact that he was not bound to the terms of the agreement. No, no, no. That's standard line in every sentence. Every district judge says that, and there's a reason, because the district judge can reject the plea agreement. Right. And that's the point. What are we to derive from that? The only thing the plea will do in our argument is to bind us to what our arguments are. That's the only binding that we have. It's up to the court to determine whether or not to sentence him in accordance with that. And if we argue outside of this, you know, obviously then we could have issues around the, you know, violation of our agreement. But the agreement – Let's start with this premise. In the Rule 11, there's a colloquy at every Rule 11. In the Rule 11, your client said, I owe these taxes. Yes. Yes, he owes taxes, yes. That's right. But the question is, you know – If he said under owes, right, that he owes these taxes, just set aside where we are. If he said under owes, he owes these taxes, doesn't it seem odd that you now say that that should be contextualized? That was a plea only for those purposes. I know that if the governor hadn't pardoned him, he would have had to have paid those. But now all deals are off, and his statement with regard to what he owes is now, you know, back open for negotiation. No. We submit that that statement can be used in a civil context to attempt to establish what the actual liability is. We're just submitting that pretty much the same thing in and of itself. And so in addition to the amount, let's just say that for whatever reason in the civil context, he couldn't escape that agreed-upon amount, regardless of the relative ease of negotiating in the civil context compared to the criminal context. Let's say he can't escape that figure. At least in the civil context, he might be able to escape the payment timeframe. I've never heard of someone agreeing to criminal penalties for failure to pay on a civil judgment. That might be a few bankruptcy codes ago that we did away with that. But the thought would be this. Even if he can't escape the amount, and if he's locked into that amount by estoppel, if not agreement, he still would derive benefit from the pardon by having the enforcement mechanism against him be civil as opposed to one with criminal consequences. Right? Precisely. Well, that absolutely makes sense that you'd make that argument. But let me ask you a question that derives from that. In your opening brief, you say that restitution was a condition of Cohen's probation. I didn't see a cite to the JNC. So how do we reach the same conclusion? Statutory. The Virgin Islands Visas Rights Act, Section 203D3, makes that in all criminal sentences that are brought pursuant to Virgin Islands law, restitution must be made a condition of probation of the court as a substantial reason otherwise. So that is just pursuant to Virgin Islands statutory law, codified as the otherwise known as the Virgin Islands Visas Rights Act. Title 33, Virgin Islands Code, Section 203D, subsection 3. Mr. Manning? Yes. I would imagine in making his plea in front of the court that he was sworn in and stated somewhere along the line that his plea is willing and knowing and that the facts asserted in the charges are true, including the amount of money that he owes. And now you're saying that you want to go back and re-litigate the amount that he swore was actually true? Is that your position? Well, first of all, it's our position that an amount was not an element of the offense. Well, it doesn't matter. He said on the record, yes, I owe X amount of dollars. And now you say it's okay for him to go back to the Virgin Islands Bureau of Taxes and say, no, no, that wasn't correct. And if the government has a problem with it, they can sue it and use that as their argument that he owes. It's our position that there are defenses that we could outline pursuant to the tax code, pursuant to the enforceability of these issues that are clearly laid out. These are taxes that are allegedly went back to 2003, and the charges were brought in 2014. So, I mean, there are a lot of arguments as far as the enforceability. What you're saying is that despite the statement that he made under oath and swore to be true, he can now say, well, I didn't mean it that way. No, no. Did he make that statement? Do we have that? I mean, speaking only for myself, I would like to see the Rule 11 because different judges handle Rule 11 differently. Some require a huge exposition of the factual basis, and some just say, what are the elements? Are those proven? And so the huge variety in my experience is how district judges handle Rule 11 change of plea hearings. Did he say at this Rule 11, I know it's not in the record now, but do you know that he agreed to this specific amount, or does he just talk in elements, or what happened? If I recall, he did suggest that he owes taxes. I can't recall, and I can't represent on the record specifically if he said that I owe $892,000 and some odd dollars in taxes. I don't think that that's what he said. I just think that he said that I know I owe my taxes. I will pay my taxes. If I recall, that's what he said. As far as the actual exact amount, I can't argue today, and I can't represent today what he specifically said. Did he plead to an information, or did he plead to account of the indictment? Well, it was an information that he pled to. Right. So if he pled to the information, regardless of how he allocated, he had to have pled to the account, either one count, two count information, whatever it was. And if the amount is there, it doesn't matter if he was allocated specifically this amount. If he pled to the count, the amount is in the count. You're not saying that the count in the information is equivocal as to what the amount is, right? We're arguing that the negotiated amount was our pitch to the court and sentencing in our agreement that this is what was going to be pitched to the court. So, for example, if the negotiated amount that was going to be produced to the court at sentencing was $892,000, parties would have been precluded from requesting $2 million or $3 million in restitution. So that was just an agreement as to what was going to be argued to the sentencing court at the time of sentencing. So, sir, your position is, if I've got it right, that the pardon itself does not excuse your client's responsibility for paying taxes, that the pardon does not cover that. It's simply that you want to go back and renegotiate the amount that he is responsible for. Have I got that right? That's absolutely correct. We're not arguing that a pardon can excuse a person's ability or requirement to pay taxes. It only goes to the sentence itself. It only goes to self-admitted commitment and enforceability of said document. All right. And despite the plea agreement, you say that he did this all under duress and should be allowed to renegotiate how much he owes. Is that correct? No, I mean, that's not specific. I mean, we're suggesting that the defenses that could be brought pursuant to the tax code do not necessarily have to be accepted by the prosecutor. And they don't even have to be accepted by the sentencing court in the criminal context. But they would have to be accepted by the civil judge who would have to go in and agree or disagree as to the reductions that my client or the amounts that my client could argue, which would be factored into a negotiation between the two parties. They don't have to necessarily be factored into a criminal negotiation. All right. But that requires that we ignore essentially what took place in the context of the plea agreement where he admitted that he owed the amount that was asserted. We're arguing as far as that goes that that was an agreement between the parties as to what. That didn't bind the court. That was an agreement that this is what's going to be argued to the court at the sentencing. And if the party goes up or down on that amount, then that would be a violation of the plea. So, I mean, as far as the enforceability of that agreement, it's only to the extent that the court that they argue that at sentencing. So it's not to the extent that this is we're holding a flag up to say based on this plea negotiation, this is enforceable forever. No, I mean, that's just enforceable at the time of sentencing. I mean, the pardon has to have some effect. And so there's probably terms that are in the plea agreement that the pardon had effect on. And so now the question before us is, you know, certainly some parts of the plea agreement had to be affected by the pardon. Others don't necessarily need to get a pardon. And so the question is, is this part of the plea agreement affected by the pardon or not? Well, we're arguing that the pardon goes to the sentence. I mean, it goes to the judgment and commitment. And this amount, the restitution amount, is a part of the sentence. And based on the fact that it's a part of the sentence, the Third Circuit, the Supreme Court, the Virginia Supreme Court, jurisprudently feel that restitution is a criminal sanction. It's a part of the sentence. So we're asking is there any part of the sentence from the judgment and commitment? Tell me about the case that you found that involved a criminal tax situation where the taxes are deemed restitution and that restitution is deemed part of the pardon. We found those cases that we focused on were narrow enough to, you know, as far as a pardon, we think that's a new territory. Given that fact, is there an argument to be made that taxes are different, that to the extent that you make the argument that the government is a victim and when you think of restitution and victims, you should think of this being part of the criminal J&C and therefore we should essentially lop it all together. Isn't the notion of tax liability by a citizen different? Shouldn't it be different? No. And that would render all parallel civil cases that affect tax liability useless. There would be no purpose for the government to ever seek a parallel civil judgment against a party where they filed criminal charges against that party. There would never be a reason to do that. We're submitting that the reason that that's done is so that, you know, the exact amount of tax can be determined. You know, it would be the initial. So let me ask you. Oh, sorry. No, I'm so sorry. It's just a follow-up for a moment. So your point is let's throw it open, and if we owe twice as much, God bless. The civil court will hear our arguments and they'll hear the arguments of the United States or the prosecutor. Well, not the prosecutor, but of the civil, you know, attorney. And they will make a determination at the amount of tax liability. And that wouldn't be done, right, in the context. So another corollary to that is this. The court didn't even have to, for example, issue a restitution order, for example. The court could have found that my client was unable to pay and they didn't have to, you know, render a restitution judgment of that amount. So that's the reason we're submitting that you always have this parallel proceeding. Let me just follow up on that parallel proceeding amount. Let's just say that objective truth. Okay, we'll just take this out. You know, objective truth is that your client owes the amount that he agreed to pay in this restitution order. They're just, you know, we get it down, we have some degree of omniscience somehow, and we know that that's the amount. So with that being supposed, let's just say that the criminal restitution order came on and said, yeah, how about $100? You owe $100. Is it your position that that would mean that your client only ever had to pay that, or would he also have civil exposure to the full amount? To the difference. To the difference. Okay, let me just follow up on that. Let's just keep the same supposition that the objective truth is that he owes the amount that he agreed to. And let's say that he wants to pay that, but let's just say the civil authorities, for whatever reason, maybe it's misguided, think he owes more. Even if he owed that amount, they could still attempt in their civil efforts to get that additional amount from him. They may not succeed if our justice system works and delivers on objective truth. But you aren't saying that his sentence in this condition of probation barred that subsequent civil action, are you? No, not at all. And we're arguing that. So, you know, for example, the restitution court came out and said it's $500,000 that he owes, but then a civil court said it's a million. Obviously, they couldn't get a double recovery, so we would use the $500,000 that he's paid for paying to offset the million that the now civil court comes out to say he owes. So that being said, the exact calculation of tax liability, we believe, would not be calculated in a criminal negotiation. It would be calculated in a civil contract. So you really want to renegotiate the amount, not just the criminal consequences for not making your payments on time? Well, we want to negotiate the amount, I mean, the manner and the method of payment, and we also want to negotiate and determine the exact amount that was owed at the time. With that being said, we believe that's the purpose of having a civil proceeding. And, of course, we can bring those cases to the civil court. I mean, we can bring those cases to the civil court, and during our negotiation with the government of the Burkina Falcons, we'll give them the opportunity to see our deductions, our deductions, and then they'll factor that into a negotiation. And if they don't accept it, we'll give that to the civil court. Well, let me – Judge Fitz, did you have more follow-up on the question, I suppose? No, Judge Greenway, I did not. I had just a short one, Judge Greenway. You, of course, recognize that if we were to agree with you, he could end up paying much more, and his liability actually would be much more than what he agreed to. It's quite possible. It's possible. Quite possible, yes. Okay. I had a question for you with regard to the pardon itself, yeah? The pardon has several whereas paragraphs. I know you're intimately familiar with it. I want to refer you to the last whereas clause, and it's not a test. I'm going to read it to you. I know you've read it millions of times, right? Yes. So it's, whereas the governor has determined that given these circumstances, there is no more punishment to extract from or rehabilitation to provide to Jonathan Kalis Cohen for his crimes against the people of the territory, and he warrants a grant of clemency. Now, if you are suggesting to us that the language of the pardon should extend to the tax liability that arises from this criminal involvement, you really can't take the position that we owe anything, because if this language is supposed to support putting the tax liability into a different context, that's not how this would read if you were going to interpret it that way. There's inexactitude here, so this is clearly not a textualist argument. But if you were to look at this, you'd say if the governor says there is no more punishment to extract from or rehabilitation to provide, then the argument would have to be we don't owe anything. No, because if it may please the court, paying taxes is not punishment. Punishment is the manner and the method of negotiation in the criminal context. Paying taxes is having to pay $6,000 a month, $150,000 by the end of December. As defined by the criminal court. And the criminal court in that context wanted all the sums to be paid in a three-year period of time. In the civil context, once we calculate the amount, we're able then to work out a payment plan. But the manner and the method of payment is punishment. I'm so sorry. I didn't explain my point well, because that answer is not an answer to my question. So it's my fault. Let's try again. This language, when it says there is no more punishment to extract, the only argument for you to make from that is we're done. There can't be any liability. You're asking us to essentially be textualists, right? You want us to look at this and say this is what you should derive from it. I don't read this and come up with a dichotomy. I read this and say your argument should be we're done. And that's not your argument, obviously. How do we get to where you'd like us to get, given this language, if we're going to interpret punishment in the way that you want us to interpret punishment? Simply because the line, well, the statute, well, sorry, the case law, finds that restitution is inherently penal and it's designed to punish. I mean, it's just a punishing condition of a criminal sentence. What we want this court to do is to excise all of the penal consequences of the judgment commitment. And the easiest way, in our opinion, to do it is to use the existing body of case law, longstanding case law, to find that restitution is punishment. What happens from here forward, I think that's for another day. I think that's for another kind of court. Let me ask you this question, and this just goes to the scope of pardon power under Virgin Islands. Does the governor of the Virgin Islands have the power to, by him or herself, say to an individual, you, you have no tax liability? Can he do that? I mean, he might be able to say, you're not going to be punished for not paying your taxes by going to jail, or I'm going to pardon this nonpayment. But does he have the power to extinguish independent civil tax liability through the pardon power? Does he even have that power? We do not believe so. I think the only thing he can do is effect criminal punishment. If he doesn't have the power to even effectuate an underlying civil liability, nothing about a recital in pardon, it would be almost an ultra-virus action by the governor to say, you don't owe taxes, civil liability. He can't do that. He can say, you don't have punitive or criminal consequences based on your civil tax liability. Precisely. Doesn't the fact that he did not do that leave standing the obligation that was agreed to at the time that your client pled guilty? No, it doesn't, because we believe that the fact that he didn't say it, he could have made the pardon conditional. He could have said that you need to pay your taxes, and once you do that, then the rest of the conditions would be extinguished. He didn't do it. He didn't say that out of the six conditions you have, you have to comply with this one condition. What he did is he gave a blanket order extinguishing all the consequences, all the criminal consequences of the plea, all the criminal consequences, including the fact that repeatedly it's been stated that restitution is an inherent criminal consequence. It's a part of the sentence, and when the pardon comes out, all aspects of the sentence are extinguished and discharged, and terminated. That's not a simple argument. Our simple argument is the case law always repeatedly states that restitution is inherently penal. When the pardon comes out, all the penal consequences of the J&C are then extinguished. Okay. Judge Fitz, do you have anything further? No, I don't. Thank you so much for the opportunity. I've asked my share. No, thank you. I'm fine. I raised my hand as well. This is an interesting case. Counsel, we'll get you on rebuttal. Thank you. We'll hear from your adversary now. Counsel? Thank you. Dionne Sinclair on behalf of the government of the Virgin Islands. And I just want to thank my adversary for some clarification, because I too I don't think fully understood the position prior to this argument. It is our position, however, that the pardon here no way overturns the judgment or the conviction. And in this case, restitution may be a misnomer, but the tax obligation owed by this appellant. In terms of punishment, I agree with appellant that the tax obligation is not a form of punishment here. It was negotiated separate and outside of the district court even. It involved counsel. It involved the accountant for appellant. And it differed significantly from an earlier case that was recent signed to this involving Chuckie Hanson, in that this appellant here actually had his tax forms. They just were never submitted. And so the actual amount of tax liability was definitive, and it was known. And because of that. Can I just interrupt with a question? Let's just say you lose. Let's just say you lose here. And I'm sorry, I'm sorry to get you down this high post, probably not a pleasant place to go. But, I mean, that's really not that big a loss, is it? All it means is that you have to renegotiate this amount. There may not be much movement on that amount. And then you renegotiate a payment schedule. And then the consequences for not paying are not criminal. They might be liens. They might be, you know, garnishments. They might be all these other traditional ways that our remedies are available in the civil context. But I guess what I'm saying is if you lose here, you aren't just going to throw up your hands and say, ah, shucks. We just, you know, the government of Virgin Islands just lost all that money. Aren't you going to fire up the civil process and try to get the exact same amount, if not more, if you don't have the ability as a condition of probation to have the, I mean, Mr. Cohen, go to prison or face other criminal consequences? I mean, here I think there are two things. The pardon itself, that's an excused sentence. And, yes, it's in a position, I guess, similar to anyone who had not been under a criminal investigation. But for anyone else, had they been under this procedure and probation expired or the case itself was closed, normally a government could just go and seek to enforce that judgment in terms of the criminal penalty. But there would be no renegotiation. You could use your administrative and civil rights, and you would enforce the amount. It wouldn't be that the judgment was obliterated and you have to, you know, from a public policy standpoint, you know, start again from zero. Well, you don't have to renegotiate, right? You can just say, hey, this is the amount we aren't negotiating, or I'm going to pursue full civil recourse to get this amount. No compromises. You can either agree and we can do it, you know, as they say, the easy way, or we can do it the hard way. But you don't have to renegotiate this amount. You have a process by which you can do everything you can to get that exact amount, right? You don't have to negotiate. Well, normally, with the judgment in hand, you go and you enforce the judgment. Without a judgment in hand, and pretty much that there's no basis that was agreed to or ordered or directed by a court of law, then it is a renegotiation. So let me ask you this hypothetical. And this is not perfect. Okay, this is not a perfect hypothetical. But I want to – it's going to tell me plot lines about how you analyze the law. Let's just say that there's a person who's convicted of vandalism. They broke a bunch of store owner's windows. They did. And let's just say they get a criminal conviction for vandalism. And as part of a condition of probation, restitution is ordered. And the restitution says, by the end of the year, you will pay the full amount of those broken windows. And let's just say that before that due date comes, there was a pardon. Does that mean that the shop owner can't ever pursue civil remedies against that person to say, hey, I want my windows to be paid for? Well, of course not. The owner can pursue civil remedies. But also, I think there's a huge difference between the cases cited by appellant, which all have a component within – a statutory component either of a fine or a victim's fine that is part of the penal code itself where the money is instituted. That is not the case here. It was not part and parcel of this statute under which he was convicted. Instead, the money was negotiated because, as I said, the money was known. It was quantified prior to – well, prior to even the action starting, which was not the case for the predecessor, Chuckie Hanson, who was also pardoned and who did not seek to vacate her judgment or commitment because there was no figures put into her agreement. There was no figures known at that time. So let me ask you another question then. What would the governor of the Virgin – let's say the governor of the Virgin Islands had this intention. Let's just say that the governor of the Virgin Islands wanted to say, I don't want Mr. Cohen to face the payment schedule and the restitution order that has been ordered upon him by the district court. Maybe that he agreed to or agreed to plea to at least. And the governor of the Virgin Islands says, but I still want that. I don't want to extinguish that tax liability. Maybe I can't even do that. I want that civil tax liability there. I just want to pardon him so that if he misses a payment or something else like that, he's not in the criminal justice system for doing so. Could – so I guess I have two questions. Could the governor of the Virgin Islands, with that intention, could he have a way to effectuate that intention or is that off the table? And then the second question is, if that's possible, then why doesn't this pardon achieve that? Well, I think by the clear language with which this pardon was written, he specified – But the first question, could he do – is that possible? Let's start with the first question because what's in his pardon power is the starting point. If the governor of the Virgin Islands said, you know what I want to get you out of? I want to get you out of that severe – and I'm using these adjectives not truly but rhetorically – that severe payment schedule. I want to pardon you so that we can just go and get some liens on your property and garnish your wages and do whatever else like this. Is that in the power of the – the pardon power of the governor of the Virgin Islands just to take off the table this criminal restitution payment schedule or is that just impossible for him to do? I think in terms – it's clearly impossible for him to extinguish the tax obligation itself. In terms of – Is that impossible or illegal? Both, both. In terms of the methodology of the payment, which is what you're speaking of, and how it's paid and the timing and things like that, if I understand you correctly, whether that could be impacted by a pardon. Is that the question? Yeah, it's whether he could say everything associated with this criminal case to effectuate your tax liability is no longer binding on you. Well, forget it all. We'll go after you in the civil context. Can he do that? I do put that the way that you just did in the latter context. I do not believe so because language to that effect, to me, sounds as if you are saying that the tax obligation itself – No, no, it's not. It's not. It's just saying that we will not vindicate this tax liability through the criminal – through this criminal action, and I pardon you for that. It doesn't say we will not vindicate this tax liability forever or under all terms and circumstances. It just says we will not seek redress or to vindicate this tax liability through the criminal process, you know, hereby pardoning. Does he have the power to do that? Recognizing he doesn't have the power to sua sponte, distinguish the underlying liability, the question is just, you know, as I quipped earlier, the easy way or the hard way. All he's picking is a road. I'm going to qualify the judge's question, if I may, because I think there are two possible answers. Is there an answer statutorily, and is there a common law answer? From my understanding, we do not have a statute that speaks to whether the judge can impact the methodology of repayment of taxes in the criminal process. So I would believe that the answer would be no. But I don't recall a statute offhand that says whether the executive can, on its own, impact how a tax obligation is paid. Well, if I could – go ahead. I'll take the next one. No, I guess my question is, look, I mean, you might be looking for the wrong thing. Isn't the right thing to look for a limitation on the pardon power? I mean, is anything about the pardon power so limited that it would prevent the governor of the Virgin Islands from saying we won't pursue this liability, much like the vandalism example? We won't make you pay. It's part of the criminal process. I mean, but you still have to pay in the civil route. Is there anything about that pardon power that's limited that says no? That's beyond the scope of a pardon power if there's a parallel or collateral civil obligation. Okay, well, there's two things. Well, the pardon power is limited to the punishment for the crime. And then under common law, the executive cannot overturn a court order. So that would have to be done by the court or a court itself, not the executive. So those are both to play under situations just like that. We have to – is this Ms. Rich, by the way? I'm sorry? Can you hear me? Yeah. I was just going to ask, is this putting together? Yeah. I just wanted to bring your attention to the fact that we have some cases. We have two cases specifically that say that under the Federal Probation Act, restitution remains inherently a criminal activity. We said that in Slate, and we said that in U.S. restitution, orders made pursuant to criminal convictions are criminal penalties. Under those circumstances, does the governor have a right to forgive a tax payment or tax consequences that were not satisfied? Well, you also have the case, I believe it's under Kolodesh, where you cited that under the specific statute, it showed that essentially there was no taking, nothing by the appellant that was taken from him in order to take his restitution. The restitution was, in fact, what belonged to the victim in that case. So that was – even though restitution is primarily punitive, that that was compensatory, and that divides parole and the other cases. But if the governor can pardon tax liabilities, isn't it instructive that he chose not to do so in this case? Yeah, I believe it is. And again, I mean, just to highlight the difference between this case and the case that came very shortly before it, these are not figures that were stood about to be appellant by the government, by the IRB, or by the IRS. These are figures that were brought about by appellant-owned accountants because the returns were, in fact, done. They were just not submitted. And this is how the quantified debt came to be known. Do you have before you the language that the governor used in issuing the pardon in this case? The whereas? Yeah. No, the language, yeah. So whereas Johnson and Kalis-Cohen was convicted of a failure to file probation in the District Court of the Virgin Islands, a violation of local law on September 25, 2015, and sentenced to five years' probation. And whereas Johnson and Kalis-Cohen had served their sentence, has exhibited remorse, is making positive contributions to society, is demonstrating by the conduct of his life that he's rehabilitated and has learned from his mistakes. And whereas the governor has determined that during these circumstances there is no more punishment to extract from or rehabilitate from to provide to Johnson and Kalis-Cohen for his crimes against the people of the territory and he wants a grant of clemency. Okay. Go ahead. All right. No, that's fine. That didn't satisfy my thought about this case. Anybody have any further questions? Let me ask this question, if I may. Let's assume for a moment that the language of the whereas clause that you just Let's say there's no more punishment to extract from or rehabilitate from to provide to Johnson and Kalis-Cohen for his crimes, and there was a specific mention of the taxes or tax liability, right? Would the government's position in that circumstance be that the pardon is ultraviolent? You're saying if the pardon. If the pardon explicitly mentions extricating, forgiving, whatever verb you want to use, Mr. Cohen's tax liability, would the government's position in that circumstance be that the pardon is ultraviolent? And not that you could subsequently take civil action against Mr. Cohen, but that the governor had acted outside of his pardoning power in doing that? I believe if the wording was as you indicated, that would be our position, because that would negate any recourse civilly, any other recourse. It would just be extinguished. Can I just ask one question? That assumes that a whereas clause, which is typically called recitals, and at least from my small time with, you know, working on drafting of contracts and corporate agreements, that the general rule, I thought, was that recitals typically aren't binding. These just give a context for an agreement in case there's mutual mistake or in case there's something else. That's the reason you include whereas clauses. So is there anything in a whereas clause that could ever be ultraviolence, if it's not binding? Well, in this case, the whereas clause came right before the now therefore by the power of the court. But it's the now therefore clause that's binding. It's the recitals that aren't binding. I mean, is there a Virgin Island law? And I don't know Virgin Island law on recitals. I mean, there are a few outlined jurisdictions that treat recitals as binding. But my notional understanding is that recitals aren't binding. They're put in to contextualize, especially sometimes matters of public interest need to be contextualized, and they're there to avoid any allegation of mutual mistake. But they aren't binding.  Right. But the whereas clause here led to explain what is contained or what is meant by restore all civil rights in respect to the not allowable by the law and in order to explain what was meant within the context of the pardon itself. So if it was a whereas clause and then subsequently now and therefore said to be eradicated, you look back at the whereas clause to understand what was the thinking or the mindset and what was to be extinguished by this pardon. But that may be mindset, but you seem to suggest that it's not binding. And so the binding part is to restore the civil rights in all respects to the extent allowable by law. So we've kind of talked a little about what would be ultra-virus. But once it restores his civil rights, it's his civil right to miss one of these payments, even if he agreed to them, and not face punitive consequence for that. Right? Well, in this circumstance, he actually missed several of the payments and was not penalized criminally for it, which is the only, I guess, response was that payments would then be moved to the court instead of directly to the IRB. And with the court's order in this case now removed itself as that middle agency at the same time that it extinguished parole. I mean, not the parole, the probation. So in that context, you know, assuming things would go as before, despite the court's order, there has been no criminal penalty for the missed payment. Well, we have said on two different occasions that restitution orders that are made pursuant to criminal convictions are criminal penalties. Restitution is equated with a criminal penalty. In that context, why doesn't the governor's pardon include the tax liability? Because in the context of at least here in the Virgin Isles, the restitution must include punishment. And in this case, I don't see how this tax obligation that preceded this action in and of itself can be labeled as punishment. It is merely the obligation that he had, not only for his individual taxes, but for his gross receipt taxes. But isn't the fear of... Oh, sorry, Judge Fuentes. No, I mean, isn't what's punitive about this, the consequences for noncompliance? I mean, there's a great number of conditions of probation that judges put on people that they may otherwise just out of freedom elect to do. What makes those conditions punitive, in part, is the fact that there's criminal consequences for not complying with those. And so isn't it not the fact of the tax liability that makes it punitive, but the fact that missing the payment schedule subjects him to criminal penalties? Isn't that what makes it punitive and that underlying fact isn't punitive and that that can be redressed through the civil process, but the pardon takes off the table, this criminal procedure and the judgment entered for enforcing that otherwise independent obligation. I am just trying to conceive of a criminal penalty. That would be associated for a missed payment in this case. Well, I mean, we get out our sentencing guidelines and we talk about if we're in A, B or C territory and stuff like this, right? Not pursuant to the plea agreement. So I am trying... Well, if it's restitution, it's pursuant to a criminal conviction. It's a criminal penalty. Why wasn't that part of the governor's decision? I'm just looking through it quickly and I don't see that that was incorporated, but assuming that there was a criminal penalty that would arise, I think the result of the pardon would probably remove the criminal penalty portion from the restitution. Yeah, but restitution is a criminal penalty according to our case law. Yeah. Well, I think two things, because I think in this action, the tax obligation was folded into restitution, but everything, the agreement, and even the judges in the full court order was very specific to state that this was a tax obligation. It was named the restitution in this action and we can make it part and partial of the plea agreement and a repayment form. Whereas in other actions, they normally would say the defendant has to consult with the IRB or the IRS and to come up with a plan and to do things in that manner. The only reason that wasn't done here is because, as I said before, the figures were not agreed upon. I think in the context of the probation being extinguished, that it would, in fact, likely roll into every other case within the territory where you have probation act extinguished, or you have a case that's closed and restitution is still owing. And in those cases, enforcement is usually by the government in a civil or administrative capacity. But in those cases, just to be clear, the judgment is committed to the defendant. It is the judgment that is enforced within a civil and administrative capacity. To screw you, Wayne? Yeah. I think that... I have nothing further myself. My colleagues may agree or disagree, but I think it would be useful, counsel, if it's not in the appendix, you'll tell us. The JNC, the plea colloquy and the plea agreement, are they in the appendix? They are not in the joint appendix. They are in the... They are filed. They are filed with the district court. I am not sure whether the transcript itself is filed with the district court. That I have to check. Unless there are sealing orders, which we can obviously take care of, if there are, unless there's an objection by my colleagues, I think it would behoove all of us to have an opportunity to see the JNC, the plea colloquy, and the plea agreement. Okay. Can you arrange for that? I can't. Thank you. Okay. I have nothing further. Unless there's anything from Judge Fitz to Judge Puente, I think we'll have your colleagues on rebuttal. I have nothing further. I'll move it along. Thank you, Judge. Thank you both. Counsel, we'll hear you briefly on rebuttal. Very brief. I just want to address two matters. The enforceability of the Virgin Isles Law, as it pertains to judgment and commitment in a civil context, there's no such statute that permits such a procedure. Number two, well, that's all I basically have. Now I'll just open myself up for any questions that the Court may have. I have none. Neither do I. All right, Counsel, nor do I. Both Counsel, this is obviously a question of first impressions as framed, and we appreciate the vigor in which both of you argued your respective cases. And we'll take the matter under your advisement and wish the best to you and your family to stay safe during this time of world crisis.